## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DONNAIRE FAULKNER,<br>    Plaintiff,<br><br>    v.<br><br>DEFENDANT "1" a/k/a "XIANGMING CHEN", DEFENDANT "2" a/k/a "MING CHEN", DEFENDANT "3" a/k/a "YANG HAOYU", and JOHN DOES 1-20, as yet unidentified Individuals, Business Entities and/or Unincorporated Associations,<br>    Defendants. | Case No. |

## COMPLAINT FOR
## CONVERSION OF STOLEN CRYPTOCURRENCIES

Plaintiff, DONNAIRE FAULKNER, by and through undersigned counsel, sues DEFENDANT "1" a/k/a "XIANGMING CHEN", DEFENDANT "2" a/k/a "MING CHEN", DEFENDANT "3" a/k/a "YANG HAOYU", and JOHN DOES 1-20, as yet unidentified Individuals, Business Entities and/or Unincorporated Associations, as follows:

### PRELIMINARY STATEMENT

1.    Defendants stole 782,890.28 Tether (USDT) from Plaintiff pursuant to a sophisticated global internet cryptocurrency fraud and conversion scheme, the current market value of which is seven hundred eighty-two thousand eight hundred

1

and ninety dollars and twenty-eight cents ($782,890.28).

2.     Defendants played a material role in the theft of Plaintiff's assets, and upon information and belief, Defendants currently possess all or a significant portion of Plaintiff's stolen property.

3.     Plaintiff brings this lawsuit to recover her stolen assets.

## SUBJECT MATTER JURISDICTION AND VENUE

4.     This is an action for damages related to the theft of Plaintiff's cryptocurrency assets as detailed below. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

5.     Venue is proper in this District pursuant to 18 U.S.C. § 1965(a) and (b), and 28 U.S.C. § 1391(b) and (c).

6.     Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through at least a fraudulent website and mobile application (Short Term Trading) which can be accessed on the internet and on smartphones and are accessible from Florida.

7.     Additionally, a portion of Plaintiff's stolen cryptocurrency is believed to be held in one or more wallets located on the Binance exchange platform, as

detailed below and within the forensic tracing report attached as Exhibit "1", incorporated by reference herein.  BAM Trading Services Inc. (BAM Trading), which together with Binance, operates the crypto asset trading platform.  BAM Trading's principal place of business is located at 252 NW 29th Street, 9th Floor, Ste 905, Miami, Florida 33217.

8.     Moreover, Defendants are foreign nationals and are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

**THE PARTIES AND PERSONAL JURISDICTION**

9.     Plaintiff, DONNAIRE FAULKNER, an individual, is *sui juris*, and is a resident and citizen of California.

10.    Defendant "1" is an individual, is sui juris, and is subject to the personal jurisdiction of this Court. Defendant "1" represented to Plaintiff Donnaire Faulkner that his name was "Xiangming Chen". Defendant represented to Plaintiff that he was from California, however, the parties' communications consistently demonstrated Defendant "1" was of Chinese descent who is likely located in China.

11.    Defendant "2" is an individual, is sui juris, and is subject to the personal jurisdiction of this Court. Defendant "1" represented to Plaintiff Donnaire Faulkner

3

that his name was "Ming Chen". Defendant represented to Plaintiff that he was from California, however, the parties' communications consistently demonstrated Defendant "2" was of Chinese descent who is likely located in China.

12.    Defendant "3" is an individual, is sui juris, and is subject to the personal jurisdiction of this Court. Defendant "1" represented to Plaintiff Donnaire Faulkner that his name was "Yang Haoyu". Defendant represented to Plaintiff that he was from California, however, the parties' communications consistently demonstrated Defendant "3" was of Chinese descent who is likely located in China.

13.    Defendants JOHN DOES 1-20 are as of yet unidentified Individuals, Business Entities, And/or Unincorporated Associations, cohorts of Defendant "1," are *sui juris*, and are subject to the personal jurisdiction of this Court.

14.    At all times material hereto, Defendants have maintained and continue to maintain private cryptocurrency wallets and cryptocurrency exchange accounts in which all of or a portion of Plaintiff's stolen cryptocurrency currently sits.

## ALLEGATIONS COMMON TO ALL COUNTS

**A. Defendants Execute an International Cryptocurrency Theft Scheme**

15.    Plaintiff desired to invest money in cryptocurrency.

16.    Plaintiff began searching online and on social media to learn how she could invest in cryptocurrency.

17.    On or about February 1, 2023, Plaintiff met Defendants who communicated with Plaintiff via Whatsapp.

18.    Defendants misrepresented that they would teach Plaintiff how to become a successful cryptocurrency trader.

19.    Defendants lured Plaintiff by showing her examples over Whatsapp of how they were successfully earning high returns on their cryptocurrency trading methods.

20.    Defendants represented to Plaintiff that they were using a trusted mobile application called Short Term Trading that, according to Defendants, was owned and operated by Crypto.com.

21.    Short Term Trading claims to be "the easiest and most secure crypto wallet". Used to store crypto and NFTs in one place, the platform claims to hold 500+ assets on decentralized exchanges and earn substantial interest.

22.    Defendant assisted Plaintiff in downloading Short Term Trading which they claimed was the Crypto.com trading mobile application. However, the application provided to Plaintiff was not the legitimate exchange application owned and operated by Crypto.com but was instead a fraudulent copycat mobile application created to deceive individuals, including Plaintiff, into believing they were investing on a legitimate cryptocurrency exchange owned and operated by Crypto.com.

23.    However, the application Defendant "1" provided to Plaintiff was not a

legitimate exchange website owned and operated by any exchange but was instead a fraudulent website created to deceive individuals, including Plaintiff, into believing they were investing on a legitimate cryptocurrency exchange.

24. To further entice Plaintiff into believing they were legitimate investors who only wanted to assist Plaintiff in becoming a successful cryptocurrency trader like them, on or about February 7th, 2023, Defendants had Plaintiff run a test where she transferred approximately $2,000.00 worth of cryptocurrency from her Crypto.com account into the fraudulent Short Term Trading mobile application. When Plaintiff was able to transfer the cryptocurrency from the fraudulent mobile application back to her Crypto.com account, she believed that Defendants were legitimate investors who wanted to help her learn how to invest cryptocurrency and, further, that the fraudulent mobile application she had downloaded was also legitimate.

25. After familiarizing herself with the process of trading on the fraudulent mobile application recommended by Defendants, and in reliance on the foregoing false and fraudulent misrepresentations, Plaintiff started to transfer cryptocurrency from her Crypto.com account, a legitimate third-party online platform for buying, selling, transferring, and storing cryptocurrency, to the fraudulent platform.

26. Defendants posted fraudulent returns on their fake mobile application which made it appear that Plaintiff was making money on her trades. As a result, she

continued to transfer cryptocurrency from her Crypto.com account to the fraudulent exchange.

27.    When Plaintiff attempted to transfer even a small portion of their cryptocurrency from the fraudulent application back to her Crypto.com, Plaintiff experienced issues and was unable to make transfers.

28.    When Plaintiff questioned Defendants about the transfer issues she was experiencing, Defendants provided excuses and made additional false representations.

29.    Plaintiff was eventually convinced not to withdrawal their cryptocurrency but to instead invest more of it in the fraudulent Short Term Trading platform.

30.    Because of the fraudulent representations contained on the fake Short Term Trading account, and misrepresentations made by Defendants, Plaintiff Donnaire Faulkner believed that she had made significant money from the investment.

31.    By the end of July 2023, Plaintiff believed she had made a considerable amount of money. Plaintiff was happy with what she believed was a significant return on Plaintiff's investment. However, Plaintiff decided it was time to transfer all the cryptocurrency from Short Term Trading back to Plaintiff's Crypto.com account.

32. However, Plaintiff was told that before Plaintiff could withdrawal Plaintiff's cryptocurrency, Plaintiff was required to transfer additional cryptocurrency to the fraudulent Short Term Trading exchange to pay penalty fees.

33. Relying on this false statement, Plaintiffs transferred another $84,707.90 worth of USDT to the fake Short Term Trading account.

34. Unfortunately, even after paying what she thought were the penalty fees owed on their investments, Plaintiff made numerous unsuccessful attempts to transfer the cryptocurrency from the fake Short Term Trading account back to her Crypto.com account.

35. Plaintiff was asked once again to deposit $214,886,67 USDT for risk margin purposes; however, the plaintiff did not deposit any other amounts and realized this could be a scam.

36. Plaintiff made numerous unsuccessful attempts to transfer the cryptocurrency from the fake exchange back to her Crypto.com wallet.

**B. Plaintiff's Forensic Tracing of His Stolen Cryptocurrency**

37. When a transaction is made on the blockchain it is assigned a "transaction hash" ("TXID"). A transaction hash is a unique string of characters that is given to every transaction that is verified and added to the blockchain. A TXID is used to uniquely identify a particular transaction. All on-chain transactions (the transactions from or to external addresses) have a unique TXID that can be seen in

transaction details. All on-chain transactions (depositing and withdrawing of funds) have a unique TXID that can be found in transaction details.

38. Within the time frame of March 18, 2023 and May 1, 2023, Plaintiff DONNAIRE FAULKNER made 13 transactions from his Crypto.com account to the fraudulent exchange. In total, Plaintiff transferred approximately 217,070.90 USD Coin (USDC) and 43,782.90 Tether (USDT) to the fraudulent exchange.

39. Plaintiff has retained forensic cryptocurrency tracing experts who have traced Plaintiffs stolen assets on the blockchain. Attached hereto as Exhibit "1" is the tracing report completed by experts at CipherBlade. Plaintiff incorporates Exhibit "1" into his verified complaint.

## COUNT 1
## CONVERSION

40. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 39 above, as if fully and expressly set forth herein, and further alleges as follows.

41. As more fully alleged above, Defendants misappropriated Plaintiff's funds.

42. Defendants have converted Plaintiff's funds to their own use or to the use of others not entitled thereto and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment.

43.    Plaintiff has suffered damages as a direct and proximate result of Defendants' conversion.

**WHEREFORE**, Plaintiff DONNAIRE FAULKNER demands that judgment be entered against Defendant "1" and JOHN DOES 1-20, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

## COUNT II
## UNJUST ENRICHMENT

44.    Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 43 above, as if fully and expressly set forth herein, and further alleges as follows.

45.    Plaintiff conferred a direct benefit upon Defendants by transferring the valuable cryptocurrency that Defendants converted from Plaintiff.

46.    Defendants have knowledge of the benefit Plaintiff conferred upon them and have retained such benefit.

47.    The circumstances under which Plaintiff conferred, and Defendants accepted, such benefit render Defendants' retention of the benefits inequitable.

48.    Equity required that Defendants return to Plaintiff the benefits he conferred upon Defendants.

**WHEREFORE**, Plaintiff DONNAIRE FAULKNER demands that judgment

10

be entered against Defendant "1" and JOHN DOES 1-20, jointly and severally, for damages, interest, costs, and such other further relief as this Court deems just and proper.

## COUNT III
## IMPOSITION OF CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS

49.    Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 48 above, as if fully and expressly set forth herein, and further alleges as follows.

50.    This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by Defendants.

51.    This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

52.    As set forth above, Defendants – through actual fraud, misappropriation, conversion, theft, or other questionable means – obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

53.    The cryptocurrency assets at issue are specific identifiable property and have been traced to Binance, Crypto.com, and Maicoin.

54.    Any and all assets being held by Defendants at Binance, Crypto.com, and Maicoin must be held in trust for Plaintiff's benefit, and Defendants are not

entitled to the benefit of wrongfully misappropriated, converted and stolen cryptocurrency assets that were taken from Plaintiff.

55. The digital assets identified herein which are being held by Defendants at Binance, Crypto.com, and Maicoin must be disgorged to Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.

**WHEREFORE**, Plaintiff DONNAIRE FAULKNER demands the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of Defendant "1" and/or JOHN DOES 1-20, in the identified cryptocurrency wallet addresses held at Binance, Crypto.com, and Maicoin and further demands that the wrongfully obtained property be returned to Plaintiff.

**COUNT IV**
**CONSPIRACY**

56. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 55 above as if fully and expressly set forth herein and further alleges as follows.

57. The Defendants conspired and confederated with each other to commit, and committed, Conversion (Count I); and Unjust Enrichment (Count II).

58. Plaintiff has suffered damages as a direct and proximate result of

Defendants' conspiracy.

**WHEREFORE**, Plaintiff DONNAIRE FAULKNER demands that judgment be entered against Defendant "1" and JOHN DOES 1-20, jointly and severally, for damages, interest, costs, and such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff demands trial by jury on all issues so triable.

## VERIFICATION

I, DONNAIRE FAULKNER, hereby declare under penalty of perjury that I have read the foregoing COMPLAINT FOR CONVERSION OF STOLEN CRYPTOCURRENCY and verify under penalty of perjury that all statements made herein are true and correct to the best of my knowledge, understanding, and belief.

Dated: April ___, 2024

DONNAIRE FAULKNER, Plaintiff

Dated: April ___, 2024             Respectfully Submitted,

/s/ Daniel J. Thornburgh

Daniel J. Thornburgh, Esq.

Fla. Bar No. 0042661

AYLSTOCK, WITKIN,

KREIS & OVERHOLTZ, PLLC

17 East Main Street, Suite 200

Pensacola, FL 32502

Telephone: 850-202-1010

Fax: 850-916-7449

dthornburgh@awkolaw.com

Attorney for Plaintiff

14